# L. E. HEWGLEY v. GENERAL MOTORS ACCEPTANCE CORPORATION et al.—286 S. W. (2d) 355.

Middle Section. September 9, 1955.

Petition for Certiorari denied by Supreme Court, February 3, 1956.

554

David E. Cheatham, of Pulaski, for complainant Hewgley.

Tom W. Moore, of Pulaski, for defendant General Motors Acceptance Corporation.

D. C. Lee and Wade & Forrester, all of Pulaski, for defendant J. R. Colvin.

FELTS, J.   This is a replevin suit brought by complainant against General Motors Acceptance Corporation (GMAC), J. R. Colvin, doing business as Colvin Motor Company, and J. L. Redding, Sheriff of Giles County, to recover a new 1954 Model S88 Oldsmobile which GMAC claims under a trust receipt from Colvin and which it replevied from him on March 26, 1954.

On the same day, complainant filed the bill herein alleging that on March 25 he bought this car from Colvin in the ordinary course of trade; that he gave his check for the price, less a deposit of $600 he had made some months before with Colvin; that he received delivery of the car that afternoon, and left it at Colvin's garage to be serviced, but before he called for it next morning it was taken in GMAC's replevin action; and that he was entitled to it as a "buyer in the ordinary course of trade."

Colvin's answer stated that he sold the car to Complainant Hewgley in the ordinary course of trade; that "on March 25, 1954, the said Hewgley came to the garage of your defendant, J. R. Colvin, and there paid the balance of the purchase price for said automobile" (less the $600 deposit); that "on said date your defendant delivered to said Hewgley the bill of sale and the title papers on said automobile;" and that complainant left the car at defendant's garage to be serviced, and before he came back for it next morning it was replevied by GMAC.

In its answer GMAC stated that it had financed the purchase of this car for Colvin, and he had given it a note for $2,538.16 and a trust receipt stating he held the car as trustee and the title to it remained in GMAC

until he paid the note; that he had paid nothing on the note, was concealing the car from its agents, and it replevied the car. It denied that complainant was a bona fide purchaser of the car from Colvin, and stated that such alleged sale appeared to be a conspiracy between them to defeat its rights.

The cause was heard before the Chancellor orally, upon the testimony of witnesses introduced in open Court; and the Chancellor held that complainant failed to carry the burden of proving that he was a buyer of the car in the ordinary course of trade, so as to be protected as a bona fide purchaser for value against GMAC's lien, and accordingly awarded GMAC a recovery against him and his surety on his replevin bond for the amount of GMAC's lien, he having disposed of the car. He appealed.

It appears from the proof that Colvin, as Colvin Motor Company, was an Oldsmobile dealer at Pulaski and had been having GMAC finance his purchases of cars from the manufacturer by means of trust recepits, in accordance with our Trust Receipts Law, 1950 Code Supp. Secs. 7792.1 to 7792.19. He had so financed the purchase of the car here involved and given GMAC his note for $2,538.16 and a trust receipt stating that he held the car as trustee and the title to it remained in GMAC until he paid his note.

He had this car, with others covered by trust receipts to GMAC, at his place of business. He had defaulted in his payments for these cars, had paid nothing on his note for this car, and was being pressed for payment by GMAC's agents. He was keeping this car and some of the others away from his garage, concealing them from these agents. On March 22, GMAC sued him in replevin for these cars, the officers were looking for

them and finally found them at Colvin's garage on March 26, the morning after complainant claims to have bought this car from Colvin.

As between Colvin and GMAC, he had conveyed this car to GMAC, it had the title, and he had no right to sell the car to anyone else. But it appears GMAC allowed him to place the car in his salesroom, and thereby empowered him to sell the car, and pass title thereto, to a buyer in the ordinary course of trade, i.e. a bona fide purchaser for value without notice of GMAC's right to the car. Sections 7792.1, 7792.10.

Complainant alleged, and undertook to prove, he was such a purchaser. In this effort he called no other witness but relied solely on his own testimony. He said that he had known Colvin some ten or twelve years and had bought or traded for a number of cars from him; and that he had had a deposit or credit balance of $600 with Colvin for a long time before he bought the car here involved.

He said that the $600 deposit arose in this way: He traded in a 1950 Oldsmobile to Colvin for an agreed allowance of $2,000 which was to be applied on two new cars he would buy sometime in the future. Sometime later, he bought the first of these cars, a 1953 S88 Oldsmobile, and $1,000 of this credit of $2,000 was applied on the purchase of this first car. Sometime later he took the second car, a 1953 Model 98 Oldsmobile, and $400 of the remaining $1,000 was applied on this car, leaving him still a credit of $600 with Colvin. Apart from these balances, both cars were bought by him on a credit, monthly payment plan.

Then, he said, he and his wife decided they wanted a new 1954 Model S88 Oldsmobile, and Colvin agreed to let them have the first one he got. Accordingly, when

this car came about the 10th of March, complainant went by Colvin's garage, saw this car, drove it, and told Colvin's Sales Manager he would take it. A week or so later, or on the afternoon of March 25, he said, Colvin brought this car to his plant, delivered it to him about 4 p. m. and he gave Colvin his check in the sum of $2,966.64 for the balance after applying the $600 credit on the price of the car.

He was careful, he said, to put the motor number and serial number of the car on the check. Colvin brought him these numbers on a slip of paper, but failed to bring a bill of sale and the manufacturer's certificate of origin of the car—title papers which both of them knew were necessary to complete the sale and to enable the buyer to obtain a license for the car. He said he asked Colvin about these documents, and Colvin told him that it was so late that the girl who would prepare them had gone for the afternoon and that he could get them the next morning.

He said that he took the car back to Colvin's garage that afternoon and left it there to be serviced and called for by him the next morning; but that when he went back for it next morning, he found that it had been taken in replevin by GMAC. He then got the title papers, and had a conference with GMAC's agent and its attorney. They told him of GMAC's interest in the car and advised him to stop payment on his check. He declined and, according to the agent, said "the check had already cleared."

He offered no satisfactory explanation why he did not stop payment of his check. He did get from the bank cashier a statement that he asked the bank to stop payment at 12:05 p. m., March 26; but this was more than two hours after he knew GMAC had replevied the car.

Why he did not act sooner, or whether the check had been paid by 12:05 p. m., or when it was paid, were matters which he could, and doubtless would, have proved if it would have helped his case.

He bought this particular car, he said, because he and his wife liked it and wanted it for their own use. When he took it in this suit, however, he did not use it but stored it with a Mr. Scales, and two or three weeks later sold it through Scales, and perhaps Colvin, to someone in Alabama, but he was unwilling to disclose to the Court the facts about this sale, though he did say they sold it for a profit.

Colvin did not take the stand as a witness for himself, but was put on and briefly questioned by GMAC's counsel. Colvin said he sold the car to Complainant Hewgley on March 25, 1954, took it out to him that afternoon at his plant, and then and there received his check in payment for the balance on the car less the $600 deposit.

It is said for complainant that GMAC, having called Colvin as its witness, is bound by his testimony that he sold the car to complainant, carried it out to him, and received the check for it on March 25; and that this testimony corroborates that of complainant; and that both are sufficient to make out his case, and the Chancellor should have so held.

■ It is true there is a rule that a party cannot impeach his own witness, and this precludes him from impeaching the witness in certain ways, such as by proof of bad character, etc., but it does not mean that he is bound to take the witness' testimony as true where it is in conflict with other evidence, testimonial or circumstantial, or otherwise appears to be untrue. Gillespie v. Federal Compress & Warehouse Company, 37 Tenn. App.

476, 494, 265 S. W. (2d) 21, 30; 3 Wigmore on Evidence (3rd ed.) Secs. 896-916.

■ ■ As pointed out by the Chancellor, Colvin's testimony is completely contradicted by his answer as to the circumstances of the sale and delivery of the car. His answer, though not under oath, was conclusive evidence against him (Gibson's Suits in Chancery, 4th ed. Sec. 459), and destroyed his contradictory testimony, Johnston v. Cincinnati, N. O. & T. P. Ry. Co., 146 Tenn. 135, 158, 240 S. W. 429. So we think the Chancellor properly held that GMAC was not concluded by Colvin's testimony and that such testimony did not corroborate complainant.

Apart from complainant's own testimony, there is no evidence of any delivery of the car to him or that he ever had possession of it. He admits he never had the title papers before the car was replevied by GMAC. His claim that he had the car a short while that afternoon and returned it to the garage, is opposed by Colvin's answer and by other suspicious circumstances. At any rate, after the alleged sale, both the car and the title papers remained in the seller's possession until the car was taken by GMAC.

■ The rule in this state, established since an early date, is that a seller's retention of personal property, after a sale, is prima facie evidence of fraud, and puts on the buyer the burden of proving the transaction was fair and bona fide. Callen v. Thompson, 11 Tenn. 475, 24 Am. Dec. 587; Young v. Pate, 12 Tenn. 164; Wiley v. Lashlee, 27 Tenn. 717; Shaddon v. Knott, 32 Tenn. 358, 362; Grubbs v. Greer, 45 Tenn. 160, 164.

Elsewhere there is a difference of view as to whether such retention by the seller renders the transaction conclusively, or merely prima facie, fraudulent as to cred-

itors of the seller. 24 Am. Jur., Fraudulent Conveyances, Secs. 42, 50; 46 Am. Jur., Sales Sec. 479.

Such retention of possession by the seller is dealt with in the Uniform Sales Act, Sections 25 and 26, Code, Secs. 7218, 7219. The former, in substance, provides that a seller, so retaining the goods, can pass a good title to a subsequent bona fide purchaser without notice. The latter section is in these words:

"7219. Creditor's rights against sold goods in seller's possession.—Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, and such retention of possession is fraudulent in fact, or is deemed fraudulent under any rule of law, a creditor or creditors of the seller may treat the sale as void. (Ib., sec. 26.)"

So, both the car and the title papers remaining in possession of Colvin, the alleged sale was prima facie fraudulent, and the burden was on complainant to prove that it was fair and bona fide, or that he was bona fide purchaser for value without notice. Such burden was placed on him both by the above rule and by the pleadings.

These were some of the badges of fraud calling for explanation: (1) GMAC was pressing Colvin and about to take the car from him; (2) he and complainant were close friends and had had many transactions together; (3) he retained possession of the title papers and the car; (4) complainant claims he paid $3,566.94 for the car, or some $300 more than the regular price; and (5) his unaccountable delay in asking the bank to stop payment of his check.

In order to sustain complainant's claim as a bona fide purchaser, it was necessary for him to allege and

prove that he had no notice of GMAC's right, (1) not only at the time of his purchase of the car, (2) but also at the time of his actual payment of the consideration for it. Jarman v. Farley, 75 Tenn. 141, 144; Ellis v. Temple, 44 Tenn. 315, 316, 321-322; Gibson's Suits in Chancery (4th ed.) Secs. 75, 332; 3 Pomeroy's Eq. Jur. (5th ed.) Sec. 755; Note, 32 L.R.A. 63.

If it could be said that he proved the first of these requisites, it certainly cannot be said that he proved the second; for if, after receiving notice, he could have stopped payment of his check, he was not a bona fide purchaser. Without offering any satisfactory proof on this point, he cannot claim the status of a bona fide purchaser.

So we agree with the Chancellor that complainant failed to carry the burden of proving that he was a bona fide purchaser of the car without notice. All of complainant's assigments of error are overruled, the Chancellor's decree is affirmed, and a decree will be entered here for GMAC against complainant and Joe W. Scales, surety on complainant's replevin bond and on his appeal bond, for the amount of the decree below, with interest, and the costs of the appeal.

Hickerson and Shriver, JJ., concur.