IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1997 SESSION

FILED

July 18, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9610-CC-00360 |
| Appellee, | * | HARDEMAN COUNTY |
| VS. | * | Hon. Jon Kerry Blackwood, Judge |
| TONY LEON HIGGS, | * | (Aggravated Burglary and Theft of Property $1,000.00 or more but less |
| Appellant. | * | than $10,000.00) |

For Appellant:

Gary Antrican
District Public Defender

Jeannie Kaess
Asst. District Public Defender
118 East Market Street
P.O. Box 700
Somerville, TN  38068

For Appellee:

Charles W. Burson
Attorney General & Reporter

Kenneth W. Rucker
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN  37243-4351

Elizabeth Rice
District Attorney General

Jerry Norwood
Asst. District Attorney General
302 Market Street
Somerville, TN  38068

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Tony Leon Higgs, was convicted of aggravated burglary and theft of property valued over $1,000.00 but less than $10,000.00. The trial court imposed Range II, seven- and four-year sentences, respectively. The sentences are to be served concurrently.

In this appeal of right, the defendant challenges the sufficiency of the evidence and contends that certain testimony should not have been admitted at trial. We find no error and affirm the judgment of the trial court.

On the afternoon of September 4, 1995, Unice Woods, accompanied by her son, Jarvis Beasley, drove into the driveway of their residence and noticed that someone had broken into their front door. They heard noises from inside the residence. Beasley, fourteen years old at the time of trial, then saw a man, who was wearing a black bandanna around his hand, carry a radio out the side door of the Woodses' residence. When the burglar went back inside the house, Ms. Woods drove to the Bolivar Police Department to report the crime.

Deputies Wesley Green and Anthony Bynum of the Hardeman County Sheriff's Department responded to a dispatch, made sure the residence was secure, and then reported that it was safe for the family to return. When Ms. Woods's husband, Joe Woods, arrived at the residence, he saw that the front door had been knocked down. A bedroom television had been moved into the living room, jewelry had been scattered, and a VCR and a second television had been unplugged. Several items were reported as among those missing: a Pulsar watch, a tiger-eye ring, a wedding band, a ruby and diamond ring, a gold ring with a diamond, two pairs of diamond earrings, two gold bracelets, a gold chain with a charm, some clothing,

2

and $475.00 in cash. Another VCR and compact discs had been placed in a front room of the house as if about to be carried away.

While at the police station, Beasley identified the defendant from a lineup consisting of ten photographs. Beasley remembered having talked with the defendant on several occasions prior to the burglary; he described the burglar as a black male and, prior to the photographic lineup, told his mother that the burglar was the person who had borrowed his bike sometime earlier. When Ms. Woods asked if he was referring to Tony Higgs, Beasley replied, "Yes." Eventually, the Woodses received approximately $1,500.00 in insurance proceeds.

At trial, Earnestine McNeal, Unice Woods's cousin, testified that she had seen the defendant in the possession of four or five rings sometime after the burglary. When the defendant asked if she would like to purchase a ring, Ms. McNeal recognized one of the rings, which had not been reported as stolen, as belonging to Ms. Woods.

The defense produced several witnesses. Virginia Williams recalled that the defendant had attended a barbeque at her residence in Middleton, Tennessee, late on the afternoon of September 4, 1995, which was Labor Day. She did not recall, however, when the defendant arrived. Other witnesses said they observed the defendant at the barbeque but could not pinpoint his time of arrival. Clyde Braddock, however, claimed that he was with the defendant on that Labor Day from between 2:00 or 3:00 P.M. until the end of the day. Braddock, who conceded that he was a friend and co-worker of the defendant, admitted on cross-examination that he had not informed authorities of the alibi from the time of the arrest until the time of trial.

3

# I

Initially, the defendant contends that there was "no competent evidence of the value of the property" to support the conviction of theft over $1,000. The defendant points out that Joe Woods's testimony was that he filed an insurance claim around "$1,100.00, if that much," and Eunice Woods estimated insurance coverage in the amount of $1,500.00. The defendant insists that the amount of the coverage was not sufficient.

A jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. State v. Hatchett, 560 S.W.2d 627 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as triers of fact. Byrge v. State, 575 S.W.2d 295 (Tenn. Crim. App. 1978). This court may not reevaluate the evidence or substitute its inferences for those drawn by the trier of fact. Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). A conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

One commits a theft of property if, with the intent to deprive the owner thereof, the person knowingly obtains or exercises control without the owner's effective consent. Tenn. Code Ann. § 39-14-103. Traditionally, the carrying away of property, no matter how slight the distance, with any intent to deprive the owner, constituted a larceny. See, e.g., Caruso v. State, 326 S.W.2d 434, 435 (Tenn. 1958). The successor offense, theft, is a Class D felony if the property obtained is $1,000 or more but less than $10,000. Tenn. Code Ann. § 39-14-105(3).

Value is defined as follows:

(i) [t]he fair market value of the property or service at the time and place of the offense; or

(ii) [i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense.

Tenn. Code Ann. § 39-11-106(a)(35)(A).

In addition to the sum of $475.00 in cash, the Woodses collectively testified that a Pulsar watch, a tiger-eye ring, a wedding band, a ruby and diamond ring, a diamond ring and band, a gold ring with diamonds, a gold chain with a diamond charm, two pairs of diamond earrings, a thin gold chain with a diamond charm, two gold bracelets, a Tommy Hilfiger shirt, a compact disc, a radio/compact disc player with a dual cassette, a denim jacket, and one leather jacket had been stolen from their residence. None of the items were recovered. Other property had been moved around by the burglar and, by all appearances, would have also been hauled away had the Woodses not interrupted the burglary. Insurance benefits ranged between $1,100.00 and $1,500.00. See Rule 701(b), Tenn. R. Evid.; Neil P. Cohen et al., Tennessee Law of Evidence, § 701.6 (3d ed. 1995).

From all of the circumstantial evidence, a jury could properly infer that

5

the value of the property taken was between $1,000.00 and $10,000.00.  A trier of fact may, from all of the evidence presented at trial, determine the fair market value of the stolen property.  State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981). Thus, the evidence is sufficient.  Moreover, any suggestion that Beasley did not adequately identify the defendant would not be a basis for reversal.  He had known the defendant for several years, used to be a neighbor to the defendant, had talked to the defendant on prior occasions, and had once allowed the defendant to borrow his bicycle.  There is no indication that the photographic lineup was suggestive or improperly conducted.  See Neil v. Biggers, 409 U.S. 188 (1972); Bennett v. State, 530 S.W.2d 511 (Tenn. 1975).

II

The defendant also complains that the trial court should have excluded the testimony of Earnestine McNeal who stated that she had seen the defendant in possession of Ms. Woods's jewelry.  The defendant complained that the testimony was irrelevant because Ms. McNeal described a piece of jewelry that Ms. Woods had not reported as stolen in the burglary.  The defendant points out that evidence is relevant only if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 401, Tenn. R. Evid.  The defendant argues that the evidence should have also been excluded under the rule prohibiting evidence of other crimes.  The defendant also argues that other crimes, wrongs, or bad acts are not admissible to prove the character of a person in order to show action and conformity with a character trait.  Rule 404(b), Tenn. R. Evid.; State v. Parton, 694 S.W.2d 299 (Tenn. 1985).

"The decision to admit or exclude evidence is left to the discretion of

6

the trial judge and his decision will not be disturbed unless it is arbitrarily exercised." State v. Baker, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989). Here, the trial court made the determination that Ms. McNeal's testimony qualified within the definition of relevance. That the Woodses might not have discovered and then reported to police all of the property taken in the burglary would not have been an unreasonable inference. Certainly, that Ms. McNeal, even though a relative, had recognized the defendant in possession of a ring belonging to Ms. Woods was probative of the crimes. The unexplained possession of stolen goods has traditionally permitted the trier of fact to infer that the possessor has stolen the items. Bush v. State, 541 S.W.2d 391 (Tenn. 1976); State v. Gautney, 607 S.W.2d 907 (Tenn. Crim. App. 1980). The credibility of the witness and the weight to be given the testimony was for the jury to determine.

Moreover, this evidence does not, in our view, qualify as evidence of another crime. It is not, in the words of the ruling in Parton, "wholly independent of that for which [the defendant] is charged." 694 S.W.2d at 302 (citing Bunch v. State, 605 S.W.2d 227, 229-30 (Tenn. 1980)). That Ms. McNeal testified that, sometime after the burglary, she saw a ring which belonged to Ms. Woods in the possession of the defendant related to the offenses at issue. It was the jury's prerogative to accept or reject any possible implication of guilt.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

7

CONCUR:


_____
Joe B. Jones, Presiding Judge


_____
Curwood Witt, Judge