IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 25, 2007 Session

**STATE OF TENNESSEE v. ROD MILLS**
**Appeal from the Circuit Court for Sevier County**
**No. 9990    Richard R. Vance, Judge**

---

**No. E2006-02207-CCA-R3-CD - Filed June 5, 2007**

---

In January 2004, a Sevier County grand jury indicted the defendant, Rod Mills, on one count of theft over $10,000, a Class C felony. The defendant waived his right to a jury trial. In May 2006, a bench trial was held and the defendant was found guilty on the sole count of the indictment. The trial court sentenced the defendant to five years in prison as a Range I, standard offender. The defendant appeals, alleging that the evidence was insufficient to support his conviction. We conclude that the evidence was insufficient to prove that the defendant possessed the requisite mental state and therefore reverse the judgment of the trial court and dismiss the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Dismissed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. NORMA MCGEE OGLE, J., not participating.

P. Richard Talley, Dandridge, Tennessee, for the appellant, Rod Mills.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Al Schmutzer, Jr. (at trial) and James Dunn (on appeal), District Attorneys General; Steven R. Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At trial, Linda Maples testified that at some point prior to her husband's death on April 27, 2001, she and her husband brought their 1982 Chevrolet Silverado pickup truck to a garage owned by Ray McMahan. Mr. and Mrs. Maples had recently "gutted" their truck and had purchased new parts for the truck, including a new engine, which McMahan was to install. Mrs. Maples testified that the total cost of the refurbished truck was "[a]round $30,000," with the engine valued between $8000 and $9000.

Mrs. Maples testified that over the next year and a half, she asked McMahan about the status of the truck many times, and each time McMahan provided her with an excuse as to why the truck was not ready. At one point, McMahan told Mrs. Maples that one of his employees had taken the truck on a joyride and hit a tree on Old Knoxville Highway. Ultimately, at some point after Mr. Maples died, McMahan told Mrs. Maples that her truck had disappeared from the lot and he did not know where it was located. Mrs. Maples then contacted the Pigeon Forge Police Department and reported the vehicle stolen.[1]

Mrs. Maples testified that approximately two years after reporting the truck stolen, she performed some independent investigating and located the truck's engine in the defendant's vehicle. The serial number on the engine in the defendant's truck confirmed that the engine was the one Mrs. Maples had purchased for her truck. According to Mrs. Maples, the engine would not run at the time she located it.

Michael Seagle testified that in June 2001, he was employed as a mechanic in Kodak. At some point that month, the defendant, driving a McMahan's Garage rollback truck, brought a 1982 Chevrolet Silverado to his garage. Seagle testified that the defendant told him that McMahan had given him the truck "for work he had done previously." The defendant pulled the engine out of the Silverado and sold the remainder of the truck's parts to Seagle.

Detective Tim Trentham with the Pigeon Forge Police Department testified that he took Mrs. Maples' statement when she initially reported her truck as stolen. Later, Mrs. Maples provided him with information that her truck was located at the defendant's house in Kodak. On November 14, 2003, Detective Trentham located the truck's engine inside the defendant's vehicle, which was parked at the defendant's residence. On that same day, Detective Trentham took a statement from the defendant. According to the detective, the defendant said that he had worked for McMahan and was going to leave his employer because McMahan could not pay the defendant for mechanic work he had previously done. The defendant told the detective that McMahan gave him the truck as payment because McMahan did not have any cash at the time. The defendant, who Detective Trentham said cooperated with the investigation, then said that the rest of the parts were located at Seagle's garage, which in fact they were. McMahan and the defendant were both arrested and charged with theft of Mrs. Maples' truck.

Detective Trentham testified that initially, McMahan refused to cooperate with police. However, after McMahan was arrested, he became something of an informant, providing Detective Trentham with information about automobile thefts occurring throughout Sevier County. According to Detective Trentham, McMahan ultimately admitted lying to the detective about how the defendant had come into possession of the truck; McMahan claimed that he had given the defendant the truck as payment for work the defendant had previously done at his garage, and that he had not told the defendant that the truck had belonged to someone else. McMahan died on November 17, 2004, before this case went to trial.

---

[1]According to the presentence report, this meeting took place on May 29, 2001.

The defendant did not testify or present witnesses on his behalf.

## STANDARD OF REVIEW: SUFFICIENCY OF EVIDENCE

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). "In a case tried without a jury, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict." State v. Hatchett, 560 S.W.2d 627, 630 (Tenn.1978). Thus, this court does not reweigh the evidence but presumes that the trial judge has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn.1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978).

### *Theft of Property*

The defendant was convicted of theft of property over $10,000. According to the statute, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2003). In this case, it is undisputed that the defendant exercised control over Mrs. Maples' truck without her consent. Therefore, resolution of this case will turn on whether the evidence was sufficient for the trier of fact to conclude that the defendant possessed the culpable mental state.

For purposes of the theft statute, "a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-106(20) (2003). In the present case, if the defendant did not have actual or constructive knowledge that the truck was stolen, he did not know that he was depriving the rightful owner of the truck, and therefore the defendant should not have been found guilty of the offense. After reviewing the record, we conclude that the evidence produced at trial was insufficient to prove beyond a reasonable doubt that the defendant possessed the requisite mental state.

It is well-settled that circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Richmond, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999). The trier of fact may infer a defendant's intent from the surrounding facts and circumstances. State v. Lowery, 667 S.W.2d 52, 57 (Tenn. 1984); Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973). In most cases, circumstantial evidence is the only evidence available for discerning the defendant's mental state. See Hall, 490 S.W.2d at 496. However, to warrant a criminal conviction on circumstantial evidence alone, the evidence "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Crawford, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). Our court has held that the evidence "must be not only consistent with the guilt of the accused but it must also

be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt." Pruitt v. State, 3 Tenn. Crim. App. 256, 267, 460 S.W.2d 385, 390 (1970). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the [factfinder] could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 225 Tenn. at 484, 470 S.W.2d at 613. While following these guidelines, we also note that the trier of fact decides the weight to be given to circumstantial evidence, and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the [factfinder]." Marable v. State, 203 Tenn. 440, 452, 313 S.W.2d 451, 457 (1958) (citation omitted).

In Tennessee, "[t]he unexplained possession of recently stolen property gives rise to the inference, *in light of the surrounding circumstances*, that the person in possession knew that the property was stolen," State v. Anderson, 738 S.W.2d 200, 202 (Tenn. Crim. App. 1987) (emphasis added). However, this presumption is not conclusive, and "the burden of proving guilt of the offense beyond a reasonable doubt remains on the State." Bush v. State, 541 S.W.2d 391, 397 (Tenn. 1976). Such "surrounding circumstances" that have been used to support the presumption raised by the possession of stolen property have included altered Vehicle Identification Numbers or serial numbers,[2] lack of cooperation with law enforcement,[3] or the failure of others to corroborate the defendant's explanation.[4] In this case, none of these circumstances apply. Seagle testified that the defendant told him that McMahan had given him the truck as payment for services rendered, and Detective Trentham testified that McMahan, before he died, said that the defendant was given the truck as payment and had no knowledge that the truck was stolen. We reiterate that Detective Trentham must have believed McMahan to be reliable in that he was acting as an informant for the Pigeon Forge Police Department. The detective also testified that the defendant had cooperated fully in the investigation, leading police to the remainder of the stolen truck. Furthermore, the serial number from the Silverado's engine had not been removed at the time it was discovered inside the defendant's vehicle. The trial judge discounted this evidence; apparently, he based his finding of guilt on the fact that the defendant worked for McMahan, Seagle's testimony that he saw the defendant in possession of the truck shortly after the vehicle was reported stolen, the fact that the victim's engine was found in the defendant's truck, and the failure of the defendant to produce a title to the Silverado in his name. The entirety of the evidence is not consistent with the defendant's guilt and does not exclude every other reasonable hypothesis except the guilt of the defendant. The evidence produced at trial did not prove, beyond a reasonable doubt, that the defendant had actual

[2]State v. Richard Crawford, No. W2000-00335-CCA-R3-CD, 2001 WL 278091, at *3 (Tenn. Crim. App. at Jackson, March 14, 2001; State v. Leon Woodlee, No. 01C01-9611-CC-00465, 1998 WL 75430, at *2, *4-*5 (Tenn. Crim. App. at Nashville, Feb. 24, 1998).

[3]State v. Jeremy Jones, No. E1999-02207-CCA-R3-CD, 2000 WL 1195688, at *4 (Tenn. Crim. App. at Knoxville, Aug. 23, 2000)

[4] State v. Jessie F. Harris, No. 01C01-9509-CR-00303, 1996 WL 422571, at *2 (Tenn. Crim. App. at Nashville, July 26, 1996).

or constructive notice that the truck was stolen at the time he was found with the truck in his possession.  As such, the defendant's conviction must be reversed.

<u>CONCLUSION</u>

For the reasons stated above, the judgment of the trial court is reversed and the case is dismissed.


_____

_____D. KELLY THOMAS, JR., JUDGE