IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 21, 2010

## STATE OF TENNESSEE v. SIDNEY LEONARD PIGG, III

**Appeal from the Circuit Court for Marshall County**
**No. 08-CR-150     Robert Crigler, Judge**

_____

**No. M2009-01339-CCA-R3-CD - Filed May 21, 2010**

_____

The Defendant, Sidney Leonard Pigg, III, was convicted by a Marshall County jury of Class D felony theft of property. See Tenn. Code Ann. § 39-14-103. The trial court imposed a three-year sentence for this conviction, which was to be suspended following service of sixty days. On appeal, the Defendant challenges the sufficiency of the evidence supporting his conviction. Following our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Michael J. Collins, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, Sidney Leonard Pigg, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General,  for the appellee, State of Tennessee.

## OPINION

### Factual Background

On September 17, 2008, the victim, Fernando Hernanadez, was moving. He used his double-axle wooden-floored trailer to move his refrigerator and freezer to his new Lewisburg home located at 315 Greenwood Street. Because he could not move the items inside without assistance, he left the freezer and refrigerator, along with the trailer, sitting outside the house.

The next day, September 18, the victim went to the new house around 8:00 a.m., and the items were still there. When he returned four or five hours later, the freezer, refrigerator, and trailer were gone.

The victim telephoned police to report the items stolen. He relayed that he purchased the refrigerator new one year prior to September 18, 2008, for about $800 and that the refrigerator was operational. As for the freezer, the victim said it was a chest-type freezer about six-feet long, and he had bought it used about two years prior to it being taken for around $150 or $160. Although the lid was damaged, the victim stated that the freezer still worked. The victim stated that the trailer was four years old and was worth at least $800 at the time it was stolen. The refrigerator and trailer were later recovered by police and returned to the victim; the freezer was never found. Moreover, the victim affirmed that he did not know the Defendant and had not given anyone permission to take the items.

Patrolman Steve Woodward with the City of Lewisburg Police Department serendipitously saw the Defendant's truck around 8:30 the morning of September 18. At that time, he was not aware of the theft, but noticed the truck and trailer because the refrigerator was not strapped down.

Walter Emerson testified that he worked in a flea market in Marshall County. On September 18, the Defendant arrived in a white S-10 Chevrolet Blazer, with front-end damage, pulling a trailer. At that time, Emerson did not know the Defendant personally. The Defendant told Emerson he was moving. After conversing with Defendant, Emerson purchased a refrigerator from the Defendant for $50. The Defendant offered to sell him a freezer, but he declined because the top was broken. Another individual, with tattoos on his legs, was with the Defendant; however, this individual was not involved in effectuating the sale. Later that day, Emerson gave a statement to Officer Woodward.

The next day Emerson was standing outside the flea market and saw the Defendant drive by, recognizing him from the day before. Emerson phoned the authorities; he also got in his vehicle and tried to catch the Defendant. When Emerson caught up with the Defendant, Detective Jimmy Oliver with the Lewisburg Police Department had already stopped the Defendant. According to Det. Oliver, two other men were in the Defendant's truck when it was stopped; one of the men, Frank Flippin, who had tattoos on his legs, matched Emerson's description of the man accompanying the Defendant on September 18 at the flea market. The Defendant was arrested. At trial, Emerson identified the Defendant as the man who sold him the refrigerator. Detective Oliver also testified that he had ruled a man named William Davis out as a suspect in this theft.

The Defendant called Edward Duval as his first witness. Duval stated that, on September 18, William Davis offered to sell him a washer and dryer. Later that day, Davis and a man, who looked a lot like the Defendant, returned to Duval's home in a white Blazer hauling a refrigerator and freezer. The men offered to sell him the refrigerator. The man who looked like the Defendant told Duval that he wanted to sell the refrigerator because he was getting divorced and was moving. This man also told Duval that the items belonged to him and was the one who did most of the talking.

The Defendant then testified on his own behalf. On September 18, 2008, he went to Davis' sister's residence. Davis approached him, stating he had received a "blessing" and needed help moving a refrigerator and freezer. The Defendant agreed to help. After loading the items onto the trailer, they went to Duval's house to sell the items. After having no success with Duval, they proceeded to the flea market. The Defendant stated he did most of the talking with Emerson due to his good "communication skills." After selling the refrigerator to Emerson, the Defendant went to Columbia, where he sold the freezer to some "guy from the street." The Defendant agreed to buy the trailer from Davis and made a down payment of $25. The Defendant claimed he did not know the items were stolen.

The State called Davis in rebuttal. Davis showed the jury that he did not have any tattoos on his legs. Davis stated that he went to Duval's house with the "person that had the stuff" (the Defendant).

Following the conclusion of the evidence, the jury convicted the Defendant of theft of property valued at $1,000 or more but less than $10,000, a Class D felony. See Tenn. Code Ann. §§ 39-14-103, -105(3).[1] A sentencing hearing was held, and the trial court sentenced the Defendant to three years as a Range I, standard offender; this sentence was to be suspended following service of sixty days in jail. This appeal followed.

**Analysis**

The Defendant contends that the evidence is insufficient to support his conviction for theft of property valued at $1,000 or more but less than $10,000. Specifically, he contends that he did not know the items were stolen and, therefore, he had no intent to deprive the owner of his property.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is

---

[1] The Defendant was indicted under alternative theories of theft of property, being charged with unlawfully obtaining the property and/or exercising control over the property without the owner's consent. After the verdict finding him guilty on both counts, the trial court merged the counts into one conviction.

insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

A person is guilty of theft if that person, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103. Essentially, the Defendant's argument is based upon his contention that the State's witnesses were not credible, asserting instead that the jury should have accredited his version that he relied on the statements of William Davis when he took and sold the items, never knowing the items were stolen. This argument is misplaced because the credibility of witnesses and reconciliation of conflicts in the testimony are matters "entrusted exclusively to the jury as the triers of facts." See State v. Oody, 83 S.W.2d 554, 558 (Tenn. Crim. App. 1991). Obviously, based upon the verdict, the jury chose not to accredit the testimony of the Defendant.

In the light most favorable to the State, the evidence established that the victim returned to his house on September 18, 2008, after only being gone for four or five hours, to find his refrigerator, freezer, and trailer missing. The victim stated that the Defendant did not have permission to remove the items from his house and established that the value of the items was over $1000. The victim immediately reported the theft to police. Officer Woodward had noticed the Defendant's truck that morning pulling a trailer with a

-4-

refrigerator and freezer loaded on it; he was concerned because the refrigerator was not strapped down.

Later that day, the Defendant went to a local flea market and sold the refrigerator to Emerson. According to Emerson, the Defendant did all of the negotiating and told him he was selling the refrigerator because he was moving. The next day, Emerson saw the Defendant driving by the flea market; he immediately reported this to authorities. Detective Oliver stopped the Defendant, who was accompanied by Frank Flippin, a man with tattoos on his legs, matching Emerson's description of the man accompanying the Defendant at the flea market the previous day.

The jury chose to accredit the prosecution witnesses' testimony and did not find the Defendant's version believable. It is not within our province to re-weigh or reevaluate the evidence presented. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Additionally, it is well established that the unsatisfactorily explained possession of recently stolen goods, in light of the surrounding circumstances, permits an inference that the individual in possession stole the property or knew the property was stolen. See, e.g., Barnes v. United States, 412 U.S. 837, 843-44 (1973); Bush v. State, 541 S.W.2d 391, 394 (Tenn. 1976); State v. Anderson, 738 S.W.2d 200, 202 (Tenn. Crim. App. 1987). The jury may choose to apply the inference, even in the face of contradictory evidence or the defendant's contrary explanation. State v. Land, 681 S.W.2d 589, 591 (Tenn. Crim. App. 1984); see Bush, 541 S.W.2d at 395. We conclude that the evidence is sufficient to establish that the Defendant knowingly obtained and/or exercised control over the property of the victim without his consent and with the intent to deprive him of said property.

### Conclusion

In accordance with the foregoing, we conclude that the evidence is sufficient to support the Defendant's Class D felony theft of property conviction. The judgment of the Marshall County Circuit Court is affirmed.

_____
DAVID H. WELLES, JUDGE