IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 10, 2002

## STATE OF TENNESSEE v. TOMMY WILLIAM DAVIS

**Direct Appeal from the Circuit Court for Cocke County**
**No. 8427      Ben W. Hooper, II, Judge**

**No. E2002-00511-CCA-R3-CD**
**February 28, 2003**

The defendant, Tommy William Davis, was convicted of Class D theft of property over $1,000 and was sentenced to a term of six years incarceration, as a Range II offender. On appeal, he argues that the trial court should have granted a judgment of acquittal at the close of the state's proof, and he challenges the length of his sentence as premised on an invalid enhancement factor. Our review convinces us that the evidence was sufficient to support his conviction and that, although improper enhancement factors were applied, a sentence of six years is appropriate.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., joined and JERRY L. SMITH, J., filed a concurring opinion.

Edward C. Miller, District Public Defender; and Amber D. Haas, Assistant District Public Defender, for the Appellant, Tommy William Davis.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Al Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In the light most favorable to the state, the evidence at trial showed that on August 13, 2000, Jenny Egert left her home in Newport around 11:00 a.m. to go to work. She worked a twelve-hour shift at her place of employment in Gatlinburg, and when she returned home around 1:30 a.m. on August 14, she discovered that her residence had been burglarized. Missing items included her clothing, a radio, guitar, numerous musical compact discs, and a compact disc player. At trial, Ms. Egert estimated that the value of the stolen items was slightly less than $2,000.

Later that same day, Newport Police Officer Mark Strange was on patrol and noticed a blue Toyota Tercel traveling in the opposite direction. The driver of the Toyota, the defendant, and

the passenger, Johnny Coleman, were known to Officer Strange. Aware that both men had outstanding warrants for their arrest, Office Strange began following the Toyota. When another police unit came into close proximity, Officer Strange activated his blue lights to signal the defendant to stop. The defendant failed to yield, and a chase through a residential area ensued.

Officer Strange testified that the vehicle chase ended when the Toyota crashed on O'Neil Road next to the Pigeon River. The vehicle's occupants, however, fled on foot and were able to escape at that time. Officer Strange and other detectives who arrived at the scene after the wreck inventoried the vehicle and found a guitar in the trunk and a compact disc case in the floorboard behind the driver's seat. The items were left inside the vehicle, and the vehicle was taken to an impoundment area. Neither the defendant nor his passenger was the registered owner of the vehicle.

Detective Robert Caldwell with the Cocke County Sheriff's Department testified that he interviewed the victim on August 14 about the items that were taken from her. Later, Detective Caldwell requested that the victim come to his office to view the guitar, the musical compact discs, and the compact disc case that had been found in the vehicle driven by the defendant. The victim identified the property as belonging to her, and after photographing the items, Detective Caldwell returned the victim's property.

The defendant's passenger, Johnny Coleman, testified for the defense at trial. Coleman said that he had spent the night of August 14 at the house of his girlfriend's cousin. Coleman testified that in the morning, the defendant came to the house, and the men borrowed the car of the girlfriend's cousin to go to town. Coleman acknowledged that warrants were outstanding for his arrest, that he and the defendant fled from Officer Strange, that the car wrecked, and that he and the defendant escaped on foot.

Regarding the items in the vehicle, Coleman claimed that before going to the girlfriend's cousin's house, he "bought the items off a man beside of Brock's" and that he "was planning on reselling the items." Coleman testified that the purpose of the trip on the fourteenth was to "go to town and unload the stuff up at [his] house in Bryant Town and take it for resale to make more money off of it." Coleman said that he did not inform the defendant of the purpose of the trip or show him the items to be resold.

On cross examination, Coleman denied that he participated, along with the defendant, in burglarizing the victim's home. He insisted that he bought the items, although he could not name the seller or offer more than a vague description of the man.

Based on the evidence, the jury convicted the defendant, as charged, with theft of property over $1,000. *See* Tenn. Code Ann. §§ 39-14-103, -105(3) (1997).[1]

---

[1] The defendant was also charged with and convicted of criminal impersonation. *See* Tenn. Code Ann. § 39-16-301 (Supp. 2002). He has not appealed that conviction.

On appeal, the defendant complains that the trial court should have granted a judgment of acquittal on the theft charge, and he contends that his sentence was improperly enhanced on the basis that he was a leader in the commission of an offense involving two or more criminal actors. We reject both claims and affirm the defendant's conviction and sentence.

## I. Motion for Judgment of Acquittal

Tennessee Criminal Procedure Rule 29(a) confers upon the trial court the authority to enter a judgment of acquittal, when the evidence is insufficient to justify a conviction, either at the time the state rests or at the conclusion of all the evidence. Tenn. R. Crim. P. 29(a). When such a motion is made, the trial court is required to favor the state with the strongest legitimate view of the evidence, which includes all reasonable inferences drawn therefrom, and to discard any countervailing evidence. *See State v. Price*, 46 S.W.2d 785, 818 (Tenn. Crim. App. 2000).

The judgment of acquittal standard "is, in essence, the same standard applicable on appeal when this court is called upon to determine the sufficiency of the evidence after a conviction." *Id.*; *see State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). A jury verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). It "accredits the testimony of the witnesses for the State and resolves all conflict in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the state is entitled to the strongest legitimate view of the evidence and any reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978).

In determining the sufficiency of the convicting evidence, this court does not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956).

Without any citation to the record in this case, the defendant argues in his brief that the state "failed to provide even a scintilla of proof as to the knowledge or intent on the part of [the defendant]." Therefore he reasons, in a similar and conclusory fashion, that his theft conviction must be set aside.

Code section 39-14-103 defines theft of property as occurring "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1997). With this statute, the legislature eliminated the previous distinctions among the various criminal appropriations in favor of one theft statute. *See id.* § 39-14-101 (1997), Sentencing Comm'n Cmts. ("new generic offense of theft includes and replaces the traditional theft offenses of embezzlement, false pretense, fraudulent conversion, larceny, receiving or concealing stolen property, and shoplifting"). Pursuant to the statute, theft by obtaining property and theft by exercising control over the identical property are the same offense. *See State v. Byrd*, 968 S.W.2d 290, 292 (Tenn. 1998) ("theft of property may be accomplished in one of two manners: (1) taking or obtaining property without consent and with

an intent to deprive; or (2) exercising control over property without consent and with the intent to deprive"); *State v. Kennedy*, 7 S.W.3d 58, 70 (Tenn. Crim. App. 1999)

Experience teaches that intent is seldom subject to proof by direct evidence; in most instances, it must be inferred from the surrounding circumstances. *See State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). "This is particularly true in theft offenses where the prosecution is initiated upon a theory of exercising control over stolen property." *State v. Richard Crawford*, No. W2000-00335-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Jackson, Mar. 14, 2001).

The defendant in this case appears to challenge the sufficiency of the evidence that he knowingly obtained or exercised control over Ms. Egert's stolen property located in the back floorboard and trunk of a borrowed automobile which he was operating and while accompanied by a passenger who testified that the defendant had no knowledge of the property in the automobile. Here, although the evidence was circumstantial, it was sufficient, in our opinion, to link the defendant to the crime and to establish his exercise of control over the stolen property with the requisite criminal intent. We base our conclusion on a confluence of surrounding circumstances and the reasonable inferences that the jury was entitled to draw from those circumstances. *See generally State v. Carlos C. Beasley*, No. W1999-00426-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Jackson, May 2, 2000) ("Other than the accused stating what his or her purpose, intent, or thinking was at the relevant times, the trier of fact is left to determine the mental state by making inferences from the surrounding circumstances it finds to exist."), *perm. app. denied* (Tenn. 2001).

First, from the defendant's presence in and operation of the borrowed vehicle, the jury was entitled to conclude that he knowingly exercised control over the stolen property contained therein. *See State v. Gonzalo Moran Garcia*, No. M2000-01760-CCA-R3-CD, slip op. at 37 (Tenn. Crim. App., Nashville, Feb. 20, 2002) ("a defendant's ownership *or control over* a vehicle in which the contraband is secreted will support a finding of constructive possession and, hence, knowing possession"), *perm. app. granted* (Tenn. Oct. 21, 2001); *State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) ("Knowledge may be inferred from control over the vehicle in which the contraband is secreted."). The phrase "constructive possession" is often seen in the context of prosecutions for the knowing possession of illegal drugs; in that context, constructive possession is shown when an individual has "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." *State v. Transou*, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996) (quoting *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)). The proscription in the theft statute of "exercis[ing] control" over the property strikes us as the functional equivalent of "constructive possession," thereby allowing ownership or, as in this case, control of the vehicle to assume particular significance. Indeed, in *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995), the court referred to a stolen shotgun, retrieved from a vehicle registered to the defendant's girlfriend, as being in the defendant's "constructive possession" based on evidence that the vehicle was parked at a residence where the defendant was present, that the defendant was seen driving the vehicle the day before the theft, and that the defendant admitted to the victim that he had taken the shotgun.

-4-

Second, the defendant's failure to submit to Officer Strange's show of authority and the defendant's escape after crashing the Toyota vehicle on O'Neil Road are circumstances from which the jury could infer guilty knowledge. "A defendant's flight and attempts to evade arrest are relevant as circumstances from which, when considered with the other facts and circumstances in evidence, a jury can properly draw an inference of guilt." *Sotka v. State*, 503 S.W.2d 212, 221 (Tenn. Crim. App. 1972). In *State v. George Harold Terry*, No. 1060 (Tenn. Crim. App., Knoxville, Jan. 12, 1989), the defendant, who was a passenger in a vehicle that harbored four stolen automobile tires, was convicted of burglary and larceny. The pertinent facts, recited in the opinion, are that

> [a] police officer who had been advised of the burglary and was watching Hixson Pike several miles from the scene of the burglary saw an automobile proceeding slowly along Hixson Pike away from the direction of the Goodyear store and observed [defendant], who was a passenger, and his co-defendant, who was the driver, "looking around" in a suspicious manner.
>
> The police officer trailed the vehicle which followed an erratic course, turning right or left at every intersection, and ran a stop sign. The driver refused to stop when signaled by the police officer and a high speed chase with blue lights and siren ended when the vehicle crashed into a police vehicle blocking an intersection.
>
> [Defendant] and Co-defendant fled from the wrecked vehicle, were pursued and taken into custody by the police officers. The stolen tires were in the rear of the vehicle.
>
> After they were apprehended the defendants denied knowing each other and they denied knowing how the tires got into the vehicle.
>
> At the trial [defendant] offered no proof. Co-defendant testified he bought the tires about midnight from a friend whom he had been unable to find at a location which he could not remember and that his first awareness of the police was when one police vehicle crashed into the rear of his automobile causing it to strike the other police vehicle. He also stated that [defendant] had no knowledge of where or how Co-defendant acquired the tires.

*Id.*, slip op. at 1-2. Based on these facts, the court had no hesitation in concluding that the evidence "present[ed] questions of fact for the jury." *Id.*, slip op. at 2. In particular, the court pointed out that the jury was entitled to draw an inference of guilt from the defendant's flight. *Id.*, slip op. at 3.

Last, the jury was entitled to infer the defendant's guilt based on the unexplained possession of stolen property shortly after the burglary of Ms. Egert's residence. The law is settled

that the unexplained possession of recently stolen goods may warrant the inference that the goods were illegally received, meaning that the possessor had guilty knowledge of the theft. *Barnes v. United States*, 412 U.S. 843-44, 93 S. Ct. 2357, 2362 (1973) (describing the inference as "a traditional common-law inference deeply rooted in our law" and "the descendant of a presumption 'running through a dozen centuries'"; instruction on inference comports with due process); *Tackett v. State*, 223 Tenn. 176, 443 S.W.2d 450, 451 (1969); *see State v. Anderson*, 738 S.W.2d 200, 202 (Tenn. Crim. App. 1987). In Tennessee, an unsatisfactorily explained possession of very recently stolen property may, in view of the attendant circumstances, support a conviction for theft. *See State v. Hatchett*, 560 S.W.2d 627, 629 (Tenn. 1987). This inference of guilt remains viable, even in the face of contradictory evidence and the defendant's explanation. *See State v. Land*, 681 S.W.2d 589, 591 (Tenn. Crim. App. 1984). It is within the jury's province to weigh the significance of the inference against the defendant's explanation. *See Bush v. State*, 541 S.W.2d 391, 395 (Tenn. 1976). This court is not entitled to displace, substitute, or nullify any such inferences the jury may have drawn. *See Liakas*, 199 Tenn. at 305, 286 S.W.2d at 859.

The property in this case clearly qualifies as "recently stolen." It was recovered by Officer Strange within 24 hours of being removed from Ms. Egert's residence. "Recently" is understood to be a relative concept that "depends upon the nature of the property and all of the facts and circumstances shown by the evidence in the case." *Anderson*, 738 S.W.2d at 202; *Bush*, 541 S.W.2d at 397 n.5. Common sense suggests that the brief interval of time undercuts the likelihood that Ms. Egert's property was transferred to an innocent third party.

The unexplained possession of stolen property inference predates the current theft statute, Tenn. Code Ann. § 39-14-103 (1997), which replaced/consolidated traditional theft offenses, such as larceny and receiving or concealing stolen property. As noted previously, theft is now defined in terms of knowingly obtaining or exercising control over the property. For the "exercising control" method of theft, it would appear illogical to require an unexplained "actual" possession before the inference could arise; otherwise, proof sufficient to raise the inference could be more rigorous than proof necessary to establish exercising control, which can be shown by constructive possession. For instance, in *State v. Donald Richard Harmon, Jr.*, No. E2001-01506-CCA-R3-CD (Tenn. Crim. App., Knoxville, May 14, 2002), *perm. app. denied* (Tenn. 2002), two defendants were convicted of theft in connection with a stolen Harley-Davidson motorcycle. A third confederate testified for the state at trial that one of the defendants, Charles Golden, stored the motorcycle in the basement of a house behind defendant Golden's residence. *Id.*, slip op at 2. Other testimony showed that the storage residence was owned by Golden's mother and that the defendant had earlier resided at the residence. *Id.*, slip op. at 3. On appeal, defendant Golden argued that the evidence was insufficient to sustain his theft conviction because the state failed to establish "that he either possessed the motorcycle or had any awareness that it was stolen." *Id.*, slip op at 4. The court disagreed and explained,

> According to the neighbors, the motorcycle was stored in a place over which Golden had control. Possession or control over the premises may allow an inference of possession of any contraband thereon. . .

. Unsatisfactorily explained possession of recently stolen property may, in the light of surrounding circumstances, allow an inference of criminal intent. . . . Further, it is within the province of the jury to accept or reject any explanation of the possession or control of the property stolen.

*Id.*, slip op. at 5 (citations omitted).

Nor do we believe that the inference disappears or that the sufficiency of the convicting evidence is impugned because of Coleman's presence, as a passenger, in the vehicle. *See State v. Sidney and Donald McGlowan*, No. 02C01-9706-CR-00225, slip op. at 2, 8-10 (Tenn. Crim. App., Jackson, Apr. 22, 1999) (officer stopped vehicle and found stolen property in the passenger seat and trunk; driver of vehicle and the passenger were brothers and found to be in joint possession of the stolen items); *George Harold Terry*, slip op. at 1-2 (defendant was passenger in car containing stolen tires; inference of guilt arising from possession was applied to defendant).

To be sure, mere presence in an area where stolen property is found or mere association with a person who does, in fact, control stolen property is insufficient to establish theft beyond a reasonable doubt. The defendant in this case, however, was more than merely present in the area where the stolen goods were found and more than just associated with Coleman. The defendant was in control of and was operating the automobile in which Ms. Egert's property was found. Part of the stolen property was ostensibly in plain view in the floorboard directly behind the driver's seat. The defendant fled from law enforcement, first in the car and later on foot. The defendant in this case attempted to explain his possession of Ms. Egert's property, asserting ignorance that he was operating a vehicle that contained stolen property; he offered Coleman's testimony that Coleman purchased the goods from an unnamed individual and that the defendant had no knowledge either of the existence of the goods in the car or Coleman's plan to resell them. The defendant never attempted to account for his presence at the girlfriend's cousin's house.

Given the circumscribed nature of this court's review concerning sufficiency of the evidence questions, as well as the jury's expansive province in determining facts and drawing inferences, we must conclude that the evidence adduced at trial was sufficient for any rational tried of fact to have found the essential elements of theft beyond a reasonable doubt.

## II. Sentencing

The defendant in this case was a Range II offender. He was convicted of theft over $1,000, which is a Class D felony. The sentencing range for the defendant, therefore, was four to eight years. *See* Tenn. Code Ann. § 40-35-112(b)(4) (1997). The trial court sentenced the defendant to a terms of six years for this conviction based on the presence of four enhancement factors and the absence of any mitigating factors. The enhancement factors are "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range,"

*id.* § 40-35-114(2) (Supp. 2002);[2] "a leader in the commission of an offense involving two (2) or more criminal actors" *id.* § 40-35-114(3); the felony was committed while the defendant was on work release, *id.* § 40-35-114(14); and the "felony was committed on escape status or while incarcerated for a felony conviction," *id.* § 40-35-114(15).

On appeal, the defendant argues that, although he and Coleman were together, the evidence at trial did not show that he "was the instigator or the leader in the charged criminal conduct." The defendant does not suggest what sentence he regards as appropriate.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see State v. Kelley*, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000). In this regard, the trial court is directed to "place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence." *State v. Jones*, 883 S.W.2d 597, 599 (Tenn. 1994); *see* Tenn. Code Ann. § 40-35-210(f) (Supp. 2002).

"The burden of showing that the sentence is improper is upon the appellant." *Ashby*, 823 S.W.2d at 169. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

We have reviewed a transcript of the defendant's sentencing hearing that is included in the record. The trial court gave no reasons why it applied enhancement factor (3), that the defendant was a leader in the offense, or, for that matter, how the mitigating and enhancement factors were evaluated and balanced in determining the sentence. We, therefore, cannot extend a presumption of correctness to the trial court's sentencing determination.

Although it is settled that enhancement factor (3) can apply even if the defendant is not the sole leader, but rather "a" leader, *see State v. Hicks*, 868 S.W.2d 729 (Tenn. Crim. App. 1993), even the state appears at a loss on appeal to justify how this factor applies. We, likewise, are confronted with a dearth of proof on this issue.

---

[2] Effective July 4, 2002, the "enhancement factors" code section 40-35-114 was revised to add a new enhancement factor. Acts 2002, ch. 849. The new enhancement factor, that the "offense was an act of terrorism, or was related to an act of terrorism," was designated enhancement factor (1), and former enhancement factors (1) through (22) were redesignated (2) through (23). Tenn. Code Ann. § 40-35-114 (Supp. 2002).

Regarding the other enhancement factors cited by the trial court at sentencing, the evidence is somewhat confusing. We are convinced that the record supports enhancement factor (2), that the defendant has a previous history of criminal convictions or behavior. Despite his young age, the defendant has accumulated an impressively long list of prior convictions. Included in the presentence report is information about fifteen other theft and burglary convictions.

Less clear to us is the application of enhancement factor (14), that the felony was committed while the defendant was on work release. At one point during the sentencing hearing, the state refers to the defendant's escape status at the time of the instant offense. Later, the trial court comments that "Enhancement Factor # [(14)] can be applied because he committed the felony of jail escape while he was on work release." Last, the defendant, himself, admitted to going to Knoxville one evening while he was on work release and not returning, although he insisted that he "had no intentions on escaping." From these remarks, we glean that enhancement factor (15), that the defendant was on escape status at the time of the offense, applies. We do not believe, however, that the same is true for enhancement factor (14) because the defendant's escape put an end to his work release.

In summary, our *de novo* review persuades us that two enhancement factors have been shown: factors (2) and (15). In our opinion, these factors are entitled to great weight. As did the trial court, we discern no mitigating factors. Weighing the two enhancement factors, we conclude that a sentence of six years, at the midpoint of the sentencing range, is appropriate and altogether warranted.

Based on the foregoing, we are unpersuaded that the defendant's conviction rests on insufficient evidence or that the length of the defendant's sentence is improper. We, therefore, affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE