# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 21, 2010

## STATE OF TENNESSEE v. DEMETRIE DARNELL OWENS

**Direct Appeal from the Circuit Court for Marshall County**
**No. 2009-CR-43      Robert Crigler, Judge**

**No. M2009-02611-CCA-R3-CD - Filed September 2, 2010**

The defendant, Demetrie Darnell Owens, was convicted by a Marshall County jury of aggravated burglary, a Class C felony, and theft of property over $1000, a Class D felony, and was sentenced by the trial court as a Range II offender to an effective sentence of ten years in the Department of Correction. On appeal, he argues that the evidence was insufficient to sustain his convictions and that the trial court erred by imposing an excessive sentence. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Michael J. Collins (at trial and on appeal) and William Harrell (at trial), Assistant Public Defenders, for the appellant, Demetrie Darnell Owens.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Charles F. Crawford, Jr., District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On May 2, 2008, Lewisburg veterinarian Dr. Randall Baker and his wife, Kathy Baker, discovered that their Marshall County home had been broken into and their home safe and its contents stolen. Because the breach of the home's security system had not resulted in a call from the couple's alarm company, the detective assigned to the case focused his initial attention on the couple's twenty-year-old daughter, Katherine Baker, who eventually

confessed that she had suggested that the defendant rob her parents, provided him with the alarm system code, and left a bedroom window unlocked in order for him to gain entry into the home. Upon further investigation, the detective discovered that four days after the burglary the defendant had pawned a diamond ring that matched the description of one stolen from the home. As a result, the defendant was subsequently charged with one count of aggravated burglary and two counts of theft of property over $1000 and tried before a Marshall County jury.

At the defendant's September 18, 2009, trial, Katherine Baker testified that she had pled guilty for her role in the crimes in exchange for a sentence of eleven months, twenty-nine days at thirty percent. She said that at the time of the burglary she was living rent-free with two roommates in a home owned by her father. Her parents had forbidden her from having parties at the house, but approximately one week before the burglary she defied their rules by hosting a party that was attended by a number of guests, including the defendant. While the party was in session, her parents stopped by the house, angrily confronted her in front of her guests about her disobedience, and ordered everyone, including her, off the premises. She and her friends left the house in three vehicles, with the defendant, Jessica Young, Chris Jackson, and possibly Jeremy Davis sharing the same vehicle with her.

Baker, who explained that she was adopted, testified that her mother made her especially angry during their confrontation by expressing regret for having adopted her and that she suggested to her companions that they retaliate by robbing her parents. She said she "kind of got scared" after making the suggestion, but the defendant encouraged her by asking questions about her parents' possessions and home security system and talking about the money and jewelry they could get in the burglary. She, therefore, gave the defendant the code to her parents' alarm system, told him that their money and jewelry were located in a safe in their bedroom closet, and discussed how he could get into the house through a window above the air conditioning unit. In addition, on the night before the burglary, she went to her parents' home and unlocked the window.

Baker testified that after she and the defendant were arrested, the defendant attempted to persuade her not to reveal his role in the crimes. She said the mother of the defendant's children also contacted her numerous times in an attempt to influence her trial testimony. On cross-examination, she acknowledged that there were five or six people besides the defendant who heard her divulge her parents' security code and discuss plans for how to complete the burglary. She further acknowledged that, a few days after the burglary, Chris Jackson told her that there was nothing in the safe.

The State introduced by stipulation evidence that on May 6, 2008, the defendant pawned a man's horseshoe ring at Household Pawn Number 2 in Nashville. Jason Smith, an

employee of the pawn shop, identified the ring, which was subsequently admitted as an exhibit, as a man's horseshoe gold ring with eleven, four-point diamonds and a weight of 6.9 DWT. On cross-examination, he estimated that horseshoe rings pass through the shop at the rate of one every month to two months, but said that, unlike the ring here, they were "usually not raised . . . with holes on the side" and did not weigh as much. In addition, the ring at issue in this case contained "two marks, one on each side of the base of the ring." He agreed, however, that were no identifying initials on the ring. He also conceded that the ring was the only item pawned by the defendant at the shop on that date.

Mrs. Kathy Baker testified that she arrived home from work on May 2, 2008, to find all the lights in and around the house lit, which indicated that the home's alarm had gone off. She said she initially thought it was a malfunction because nothing looked amiss and her husband informed her when she called him that he had heard nothing from their alarm company. Later that day, however, she went into her bedroom closet, discovered that the safe was missing, and called her husband and then the sheriff's department.

Mrs. Baker testified that when she attempted to reset her alarm at the request of the officers who responded to her house, a code came up indicating that a window was open. She said she and the officers then searched the house and discovered that a window in the spare bedroom located above the outside central air conditioning unit was open. According to Mrs. Baker, the contents of the stolen safe, which had a total value of $6,550, included $300 in cash, papers, and an assortment of jewelry, among which was a man's horseshoe diamond ring and a woman's horseshoe diamond ring. When shown the man's horseshoe diamond ring pawned by the defendant, Mrs. Baker identified it as the ring she had purchased as a first wedding anniversary gift for her husband, who was an equine veterinarian, testifying that she had chosen it with care, seen her husband wear it for the past thirty-one years, and had no doubt that it was her husband's ring.

Dr. Randall Baker testified that if a window was opened when his home's burglar alarm system was turned on, the alarm would go off, which immediately activated the system of house lights and, unless the alarm code was entered within thirty seconds, triggered a call to the security company. He said that he, his wife, and their daughter knew the code to his home's security system but that only he and his wife knew the combination to their fireproof safe, which he estimated weighed approximately seventy-five to eighty pounds. He stated that after the burglary he saw no indentations in the central air conditioning unit or in the pea gravel surrounding it, which indicated to him that more than one individual had been involved in removing the safe through the window. He said he did not know the defendant and did not give him or anyone else permission to enter his home or take his property.

Dr. Baker identified the horseshoe diamond ring pawned by the defendant as the ring his wife had given him on their first wedding anniversary, expressed his absolute certainty in his identification, and, at the request of the State, placed the ring on his finger to demonstrate that it fit. On cross-examination, he acknowledged that there were no initials or inscription on the ring but said that it had been specially sized to his finger because his hands were "a good bit smaller" than most men's hands.

Detective Bart Fagan of the Marshall County Sheriff's Office testified that he spoke to the victims' daughter on the day of the burglary after learning that she was the only person besides the victims who knew the home's alarm code. He said she initially denied any knowledge of the crimes but eventually gave a statement in which she mentioned both the defendant and Chris Young. As a result, he checked the pawn shops in Lewisburg and the surrounding counties, learned that the defendant had pawned a horseshoe ring on May 6, 2008, at Household Pawn Number 2 in Nashville, and took Mrs. Baker with him to the pawn shop, where she positively identified the ring. He said he found no record of the defendant's having pawned any items in any of the three pawn shops in Lewisburg and no record of Chris Jackson's having pawned any items. He stated that he searched for Chris Jackson but was unable to locate him.

On cross-examination, Detective Fagan testified that the defendant had pawned other jewelry at another pawn shop in Nashville, but those items were unrelated to this case. On redirect examination, he said the defendant sold a woman's horseshoe diamond ring at Jefferson Street Pawn and Jewelry, located two to three miles from Household Pawn Number 2, on May 9, 2008, but the ring was gone by the time he took Mrs. Baker to the shop to try to identify it. On recross examination, he testified that a pair of earrings that the defendant sold to the store at the same time did not belong to Mrs. Baker.

The defendant, who was disruptive throughout the entire trial, refused to respond to the trial court or his counsel when they attempted to ascertain whether he wished to testify in his own behalf and was subsequently removed from the courtroom. After he refused several opportunities to return, the trial was continued in his absence with defense counsel resting without presenting any proof.

Following deliberations, the jury convicted the defendant of aggravated burglary and two counts of theft over $1000 as charged in the indictment. At the conclusion of the sentencing hearing, the trial court merged the theft convictions and found that enhancement factors (1), the defendant has a history of prior convictions in addition to those necessary to establish his range, (8), the defendant failed to comply with the conditions of a sentence involving release into the community, and (13)(B), at the time the offense was committed the defendant had been released on parole, see Tenn. Code Ann. § 40-35-114(1), (8), (13)(B)

(2006), applied to the offenses and were entitled to great weight. The trial court found that mitigating factor (1), the defendant's conduct neither caused nor threatened serious bodily injury, see id. § 40-35-113(1), applied but was entitled to minimal weight. The trial court therefore sentenced the defendant as a Range II, multiple offender to concurrent terms of ten years for the aggravated burglary conviction and eight years for the theft conviction, for an effective sentence of ten years in the Department of Correction at thirty-five percent. This appeal followed.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first contends that the evidence in this case was too speculative and circumstantial to sustain his convictions. In support, he points out that there were no eyewitnesses to the burglary and no identifying initials on the horseshoe ring he pawned. He also points out that several other individuals were present when Katherine Baker proposed the method of burglarizing the home and divulged the alarm code. The State argues that the evidence was sufficient to sustain the convictions, and we agree.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their

demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the theft conviction, the State had to prove beyond a reasonable doubt that the defendant, with the intent to deprive the owner of property, knowingly obtained or exercised control over property without the owner's effective consent and that the value of the property was $1000 or more. Tenn. Code Ann. §§ 39-14-103, -105(3) (2006). For the aggravated burglary conviction, the State had to prove beyond a reasonable doubt that the defendant entered a habitation without the effective consent of the owner and with the intent to commit a theft. Id. §§ 39-14-402(a)(1), -403(a). A habitation is defined, as "any structure . . . which is designed or adapted for the overnight accommodation of persons[.]" Id. § 39-14-401(1)(A).

The defendant asserts that the pawned horseshoe diamond ring "did not have any markings that proved it was the same ring [stolen in the burglary] beyond a reasonable doubt." However, both Dr. and Mrs. Baker positively and unequivocally identified it as the ring that Mrs. Baker had given to Dr. Baker on their first wedding anniversary almost thirty-one years earlier. The pawn shop employee also testified that the ring, with its eleven diamonds, distinctive mounting, heavier weight, and identifying marks on each side of the base, was unlike those that he usually saw in the shop. Thus, in addition to the testimony of the defendant's accomplice, Katherine Baker, as to the defendant's role in the crimes, the State presented proof from which a rational jury could reasonably conclude that the defendant was in possession of and pawned, four days after the burglary, property that was stolen from the home. "Possession of recently stolen goods gives rise to an inference that the possessor has stolen them" and "may also be sufficient evidence to sustain a conviction for burglary." State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995) (citing Bush v. State, 541 S.W.2d 391, 394 (Tenn. 1976), and Brown v. State, 489 S.W.2d 855, 856 (Tenn. Crim. App. 1972)). We conclude, therefore, that when viewed in the light most favorable to the State, the evidence was sufficient to sustain the defendant's convictions for aggravated

burglary and theft over $1000.

## II. Sentencing

The defendant next contends that the maximum ten-year sentence imposed by the trial court "is excessive and contrary to law." Specifically, he asserts that the heavy weight the trial court assigned to the applicable enhancement factors does not comply with the purposes and principles of the 1989 Sentencing Act because his convictions were for property crimes and the limited resources of the Department of Correction should be reserved for those who commit violent or sexual offenses. The State responds by arguing that the defendant's extensive criminal record, alone, justified the maximum ten-year sentence imposed. We, again, agree with the State.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn .Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

In imposing a specific sentence within a range, a trial court "shall consider, but is not bound by" certain advisory sentencing guidelines, including that the "minimum sentence within the range of punishment is the sentence that should be imposed" and that "[t]he

sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors[.]" Tenn. Code Ann. § 40-35-210(c)(1), (2). The weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

At the sentencing hearing, Terese Frazier, the probation and parole officer who prepared the defendant's presentence report, testified, among other things, that the twenty-seven-year-old defendant's criminal record, which covered seven pages of the report, included two probation violations and the fact that he committed the instant offenses while out on parole from a previous felony theft conviction. The trial court relied on this extensive criminal record in enhancing the defendant's sentence to the maximum in the range. Because the trial court properly considered the purposes and principles of the sentencing act and applied enhancement factors that are supported by the record, we affirm the maximum ten-year sentence imposed.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE

-8-