IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 5, 2013 Session

**STATE OF TENNESSEE v. JAMES RAY WALKER**

**Appeal from the Circuit Court for Madison County**
**No. 11-42      David Hayes, Judge**

---

**No. W2012-01593-CCA-R3-CD  - Filed August 1, 2013**

---

Appellant, James Ray Walker, was indicted by the Madison County Grand Jury in January of 2011 for one count of official misconduct and one count of theft of property valued at less than $500. The events that gave rise to the indictments occurred in May of 2010 while Appellant was employed by the United States Postal Service in Jackson, Tennessee. After a jury trial, Appellant was found guilty of both offenses. As a result, the trial court sentenced Appellant to two years for the conviction for official misconduct. The trial court ordered Appellant to serve 90 days of the sentence in incarceration and the balance of the sentence on probation. Appellant was sentenced to thirty days for the theft of property conviction, to be served concurrently with the sentence for official misconduct. After the denial of a motion for new trial, Appellant filed a timely notice of appeal. On appeal, Appellant presents various allegations of ineffective assistance of counsel. In addition, he asks this Court to determine if the evidence was sufficient to support the conviction and whether his sentence was "unfair." After a review of the record, we determine that Appellant has waived any issues with respect to ineffective assistance of counsel for failure to support the issues with argument, citations to the record, or citations to authority. Moreover, we determine that the evidence was sufficient to support the convictions and that the trial court did not abuse its discretion in sentencing Appellant. Consequently, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

James Ray Walker, Pro Se, Jackson, Tennessee.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James L. Woodall, District Attorney General, and Ben Mayo, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In 2009, the United States Postal Service was contacted by representatives from the People United for Christ Church in California about an issue with their mail. According to representatives from the church, donation envelopes were being received in the mail by the church that had been torn open. The donations had been removed from the envelopes by the time they were received by the church. The Office of the Inspector General launched an internal investigation. During the investigation, it was discovered that while Appellant was on vacation, no mail was "rifled." As a result, Appellant was identified as a suspect.

At the time of the investigation, Appellant was employed by the United States Postal Service in Jackson, Tennessee as a mail handler in a mail processing facility. Specifically, Appellant's job was to "pull out mail that cannot be processed on machines" including large envelopes, bulky mail, loose mail, damaged mail, and Netflix videos. The mail that Appellant removed from the conveyor belt would be placed in separate tubs or trays to be sorted manually. As part of his job, Appellant was required to sign a "sanctity of the United States mail remittance of funds" form indicating that he would turn over any money that came into his possession during the course of his postal duties.

Agent Jennifer Born of the Inspector General's Officer placed thirty "bait" donation envelopes to the People United for Christ Church into the system at Appellant's employment location. The envelopes each contained marked one dollar bills. They were undamaged and sealed when they were placed into the system. Appellant would be the first person to encounter each of the envelopes, prior to them being "touched" by the sorting machine. After Agent Born introduced the baited envelopes into the system, she and her coworkers went to the criminal investigation office to observe Appellant via closed circuit cameras.

While Appellant was being observed, it appeared that he built what was characterized as a "fort" out of tubs close to his operation station. The "fort" made it difficult to see all of Appellant's movements. Appellant periodically placed items in the tub on the floor, bent down, and rifled through the tub. Appellant's hands were not visible while they were in the tub but agents witnessed Appellant bring envelopes up from below the conveyor belt with his hands and place them under or between other pieces of mail. One agent, Katrina

Chalmers, even saw Appellant place something in his pocket after reaching down to the tub on the floor.

The agents watched Appellant for nearly one-and-a-half hours. After that time, he was removed from the floor of the facility and taken to the Criminal Investigation Office. Appellant's station was searched. The agents found several of the "bait" envelopes at Appellant's station. They had been ripped open and their contends removed.

A further search of the area surrounding Appellant's station revealed the existence of three additional bait envelopes that were torn open and empty. The remaining twenty-four bait envelopes were recovered, still in tact and sealed.

When Appellant was taken from his station, agents requested that he empty his pockets. There were four marked dollar bills in Appellant's possession. Appellant did not give an explanation as to how the bills came into his possession. He invoked his right to remain silent and was removed from the facility.

As a result of the investigation, Appellant was indicted by the Madison County Grand Jury in January of 2011 for one count of official misconduct and one count of theft of property valued at less than $500. At trial, Appellant testified. He explained his duties as part of his employment involved "culling" mail that could not be processed by the machine. Appellant attempted to explain the actions that were shown on the video as normal. Appellant claimed that at one point during the day another postal employee gave him some items he found on the belt, including a dollar bill. Appellant insisted that he had never taken or tampered with the mail at the facility but admitted that he had thirteen dollars, a key, and a hairpin in his pocket. The hairpin and one of the dollar bills were, according to Appellant, given to him by another employee and the thirteen dollars were "found in the hamper" during the course of his shift.

At the conclusion of the proof, the jury found Appellant guilty of both offenses. The trial court held a separate sentencing hearing. As a result, Appellant was sentenced to two years for the conviction for official misconduct. The trial court ordered Appellant to serve 90 days of the sentence in incarceration and the balance of the sentence on probation. Appellant was sentenced to thirty days for the theft of property conviction, to be served concurrently to the sentence for official misconduct conviction.

Appellant filed a motion for new trial. The motion was denied by the trial court. This appeal followed. On appeal, Appellant presents the following issues for our review: (1) whether counsel was ineffective for failing to inform the jury of his degenerative joint disease; (2) whether counsel was ineffective for failing to inform the jury that Appellant

suffered from post traumatic stress disorder and was taking anti-psychotic medication that affected his demeanor; (3) whether it was ineffective assistance of counsel for failing to seek suppression of the videotape evidence; (4) whether it was ineffective assistance of counsel for failing to ignore Appellant's request to submit the initial report of the investigation; (5) whether the trial court erred in its role as thirteenth juror; (6) whether the evidence was sufficient to support the convictions; and (7) whether the sentence was "unfair."

*Analysis*

At the outset, we note that although Appellant has raised seven issues on appeal, his pro se brief addresses only one of these issues, the sufficiency of the evidence. The State submits on appeal that Appellant has, therefore, waived all issues save the sufficiency of the evidence. We agree. Appellant not only failed to address the remaining issues on appeal, he failed to make appropriate references to the record, failed to include citations to relevant authority, and failed to support his issues with argument. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Moreover, a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tenn. R. App. P. 27(a)(7). Failure to comply with this basic rule will ordinarily constitute a waiver of the issue. *State v. Hammons*, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). This Court has long recognized that pro se litigants such as Appellant are not held to the same strict drafting standards as attorneys and that pro se pleadings should be more liberally construed. However, our review shows that Appellant failed to satisfy even remotely the requirements of Rule 10(b) and Rule 27(a)(7), even when we liberally construe his briefs because he is proceeding pro se. Accordingly, we conclude that Appellant has waived all issues on appeal with the exception of sufficiency of the evidence and sentencing.

*Sufficiency of the Evidence*

Appellant claims that the evidence was insufficient to support the convictions because as a mail handler he had the owner's effective consent to exercise control over the mail. Thus, the State could not prove the elements of theft. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). Thus,

although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant herein was convicted of official misconduct and theft. The official misconduct statute criminalizes a public servant's "intent to obtain a benefit" either intentionally or knowingly, while "[c]ommit[ting] an act relating to the servant's office or employment that constitutes an unauthorized exercise of official power; [c]ommit[ting] an act under color of office or employment that exceeds the servant's official power; . . . or [v]iolat[ing] a law relating to the public servant's office or employment . . . ." T.C.A. § 39-16-402. In other words, the evidence must establish that the public servant acted intentionally or knowingly; the offense may not be completed by reckless or negligent conduct. T.C.A. § 39-16-402, Advisory Comm'n Cmts. To sustain a conviction for official misconduct, a jury need not necessarily find that another actually received the benefit, only that the public servant intended another to receive a benefit. *See* T.C.A. § 39-16-402. In order to convict Appellant of theft of property, the State was required to prove that Appellant violated Tennessee Code Annotated section 39-14-103, which states, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103. To deprive is to, "[w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner; . . . ." T.C.A. § 39-11-106(a)(8)(A).

Appellant specifically challenges the sufficiency of the circumstantial evidence of theft of property, regarding both his knowing exercise of control over the property and the lack of effective consent of the owner of the property. Appellant argues that exercising control over the property of others was inherent in his job as mail handler. Moreover, he insists that he has the effective consent of the owner's of the property, mail, because it is a function of his position as a mail handler. Finally, Appellant claims that his intent to deprive was not proven. We agree that Appellant had limited consent to exercise control over mail as a function of his job as a mail handler. However, Appellant went above and beyond that consent by tearing open baited envelopes, removing money from the envelopes, and placing them on his person, where they were discovered at the culmination of the internal investigation. "Possession of recently stolen goods gives rise to an inference that the possessor has stolen them" and "may also be sufficient evidence to sustain a conviction for burglary." *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995) (citing *Bush v. State*, 541 S.W.2d 391, 394 (Tenn. 1976), and *Brown v. State*, 489 S.W.2d 855, 856 (Tenn. Crim. App. 1972)). Further, it is well established that a "jury may infer a criminal defendant's intent from the surrounding facts and circumstances." *State v. Roberts*, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996). Therefore, the evidence was sufficient to show that Appellant not only committed official misconduct, but theft of property valued at less than $500.

*Sentencing*

Appellant also complains that his sentence is unfair. Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *See State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors

found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 705 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, according to *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." 380 S.W.3d at 709.

After a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. In this case, the trial court sentenced Appellant to two years for the official misconduct conviction, finding in mitigation that Appellant's conduct neither threatened nor caused serious bodily injury and one enhancement factor: that Appellant had a prior history of criminal convictions. *See* T.C.A. §§ 40-35-113(1), -114(1). The trial court considered alternative sentencing, noting that Appellant "accepted no responsibility for his conduct", an assertion that the trial court found was "clearly not supported by the facts." Despite the trial court's concern, the trial court ordered a sentence of split confinement for the two-year sentence, ordering Appellant to serve 90 days in incarceration and the balance of the sentence on probation. With regard to the theft conviction, the trial court ordered Appellant to a thirty-day sentence, to run concurrently with the official misconduct sentence. The trial court did not abuse its discretion. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE